**IN THE COURT OF APPEALS OF IOWA**

No. 25-0237
Filed July 23, 2025

**IN THE INTEREST OF S.S. III,**
**Minor Child,**

**T.J., Mother,**
         Appellant.
_____

         Appeal from the Iowa District Court for Jones County, Joan M. Black, Judge.


         A mother appeals the continued removal of a child.  **AFFIRMED.**


         T.J., Anamosa, self-represented.

         Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney
General, for appellee State.

         Jessica Lynn Wiebrand, Cedar Rapids, attorney and guardian ad litem for
minor child.


         Considered without oral argument by Schumacher, P.J., and Buller and
Sandy, JJ.

**BULLER, Judge.**

This appeal concerns continued removal of a child (born 2020) from his parents as of disposition in a child-in-need-of-assistance (CINA) case. Only the mother appeals,[1] and she does so pro se.[2]

The family's first involvement with the Iowa Department of Health and Human Services (HHS) was in 2020, when the child tested positive for methamphetamine and marijuana at birth, but the case closed successfully. The present CINA case arose when the parents' vehicle was stopped by police around 1:00 a.m., with the four-year-old child sitting unsecured on the central console; officers discovered methamphetamine, marijuana, and paraphernalia in the mother's purse. The child was removed by temporary order and has remained out of his parents' custody and care since. He was adjudicated CINA following a contested hearing.

After their arrests, both parents subsequently tested positive for methamphetamine, and neither parent has participated in patch testing or signed

---

[1] The mother's pro se appellate papers makes a scattershot variety of claims, including complaints about reasonable efforts; evidentiary issues; constitutional free-speech claims; and personal attacks against the county attorney, police officers, the foster parents, the district associate judge, and the guardian ad litem (GAL). We sympathize with the juvenile court's observations below that "the court was challenged to make sense of the motions as filed." We have carefully reviewed the appellate papers and the record, and we conclude all claims other than the child's continued removal are some combination of unpreserved, inadequately briefed, based on outside-the-record information, a repackaged challenge to removal, or so frivolous we summarily reject them.

[2] We note the juvenile court informed the mother below it would take limited action on her pro se filings while she also had an attorney representing her. *Cf. Hrbek v. State*, 958 N.W.2d 779, 787 (Iowa 2021). And the mother has no right to hybrid representation on appeal. *See State v. Thompson*, 954 N.W.2d 402, 416 (Iowa 2021).

a release of information to allow HHS or the court to evaluate whether they are meaningfully addressing their substance-abuse problems. The mother later participated in two urine tests (both negative), but the father refused to even do that—complaining that the observed-collection protocol was "some gay shit." In addition to the drug crimes, the mother picked up additional charges for theft while the CINA was pending and pled guilty, adding to her criminal history of other thefts, operating while intoxicated, disorderly conduct, and public intoxication. As of trial, the mother still had not admitted to consuming methamphetamine during pregnancy despite the positive umbilical test result.

During some visits between the parents and child, HHS workers and the guardian ad litem (GAL) believed they observed the child become so stressed he broke out in hives. During phone calls with the child, the parents behaved inappropriately, complaining to the child about the GAL and HHS or making false claims relating to the foster parents. Related to these concerns, HHS workers and the GAL noted the mother was likely in need of mental-health assistance, given the relentless stream of "unkind, incoherent" and disjointed text messages the mother repeatedly sent to virtually everyone involved in the case. Allegations ranged from claims that HHS was cashing in bonuses for selling the child to assertions regarding mafia involvement. And the parents made some vague threats toward the HHS worker. In a similar vein, the parents' harassing behaviors drove a previous suitable-other placement to relinquish care of the child, leading to placement in formal foster care.

While placed with the foster family, the child is doing well and has bonded. He is consistently described as a "sweet" little boy.

At disposition, the county attorney, HHS, and the GAL all recommended that removal continue, citing the child's best interests. The mother attempted to testify in the narrative while representing herself, but her testimony was—to put it mildly—hard to follow, even after she was given quite a bit of latitude by the juvenile court. The court ordered that the child would remain in HHS custody, reasoning that neither parent had substantially reduced the risk of adjudicatory harm since inception of the case by demonstrating they could be "sober and safe parents." In doing so, the court ruled that it "d[id]n't believe" much of the mother's testimony, some of which the court described as "fundamentally false."

The court was required to order "the least restrictive disposition appropriate considering all the circumstances of the case." Iowa Code § 232.99(4) (2024). And the preference is that a child remains at home with his or her parents. *Id.* § 232.102(4)(a). But "[t]he most important consideration in any CINA case is the best interests of the child," and the juvenile court is permitted to continue removal if doing so would protect the child from adjudicatory harm. *In re D.D.*, 653 N.W.2d 359, 362 (Iowa 2002); *see id.* § 232.102(4). We review de novo. *D.D.*, 653 N.W.2d at 361.

On our review, we agree with the juvenile court that continued removal was in the child's best interests. The mother's denial of and failure to work toward remedying her deficits—particularly related to substance abuse and mental health—continues to present a significant risk of adjudicatory harm to the child, as evidenced by her behaviors toward all participants in this case. *See In re D.A.*, No. 24-0094, 2024 WL 3290377, at *4 (Iowa Ct. App. July 3, 2024) ("The failure of a parent to cooperate with [HHS] and failure to utilize offered services may . . . be

considered."). We also find the father's failure to address his mental-health and substance-abuse problems is relevant here because the mother remains in a relationship with him. *Cf. In re M.E.*, No. 11-0225, 2011 WL 1584451, at *2 (Iowa Ct. App. Apr. 27, 2011) (continuing removal where one parent had not demonstrated the ability to prevent harm posed by the other parent). Without meaningful, verified action to address these issues, the case cannot reasonably progress beyond fully-supervised visits and removal was appropriately continued.

**AFFIRMED.**